[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 6075
On November 17, 1997, the plaintiff, Stanley S. Mikita II thought he went to the United States Package Office in Milford, Connecticut. Mr. Mikita thought he was responding to a notice received at his home that there was an oversized package waiting for him. Upon request, Mr. Mikita presented his identification. He was then escorted into a back room. There, he was placed under arrest. He was handcuffed. Mr. Mikita suspected that he was arrested by mistake, in lieu of his son who carries the same name, Stanley Mikita. He implored the arresting individuals to check his birth date. Approximately ten minutes later, it was determined that the wrong person had been arrested and Stanley S. Mikita II was released from police custody. He went about the rest of his day's errands. He also stopped to see a lawyer on the way home to consult about the day's events. From that consultation he was referred to his present counsel and this lawsuit ensued. Mr. Mikita missed no time from work as a result of the arrest incident. He sought no medical, psychological, psychiatric or other counseling treatment as a result of this incident.
The plaintiff, Stanley Mikita II brought this complaint in three counts against officers of several police departments who had cooperated in a police dragnet operation intended to bring in many individuals for arrest who were subject to outstanding arrest warrants. The defendants Morrin, Kimbal and Reshotnik are officers of the Town of Orange Police Department; the defendant Barre is an officer of the Town of Milford Police Department, the defendant Lukiwski is an officer of the Town of Woodbridge Police Department and the defendant Nilan is an officer of the Town of Stratford Police Department. In his lawsuit, the plaintiff's first count is in negligence, the second count sounds in negligent infliction of emotional distress and the third count is a claim of intentional infliction of emotional distress. The defendants have answered with denials and special defenses which include the defense of governmental immunity.
The court has before it three motions for summary judgment (#115, 116, and 118) filed on behalf of the defendants Nilan, Lukiwski, Barre, Morrin, Kimbal and Reshotnik. They all raise the same essential claims: that they are beneficiaries of governmental immunity as to the first two counts, that their respective behaviors were not, as a matter of law, extreme or outrageous as to the third count. The plaintiff resists these motions. In order to dispose of these motions further factual details are needed.
The defendants in this lawsuit were police officers who escorted Mr. Mikita in the back room, arrested and handcuffed him and then held him in custody until his release approximately ten minutes later. They were not CT Page 6076 at the desk where Mr. Mikita's identification was requested and examined.
After it was over, the police operation received news coverage in more than one local Connecticut paper. The plaintiff's name was not included in the articles. After Mr. Mikita filed his lawsuit, that lawsuit received newspaper coverage.
Initially, the plaintiff brought a federal lawsuit in this matter. There, the plaintiff had pursued both federal and state claims. The federal 42 U.S.C. § 1983 action was dismissed by the court (Edgington, J.) after finding that the defendants were covered by qualified immunity. The court went on to dismiss the pendant state claims without reaching them on the merits. Thereafter, this state action ensued. The defendants Barre, Morrin, Reshotnick and Kimbay moved for summary judgment, seeking application of the doctrine of collateral estoppel as a result of the federal action. The court (Licari, J.) denied the motion for summary judgment, finding that the state claims had not been "fully and fairly litigated" and the plaintiff had not had the opportunity in federal court to litigate the state claims.
The defendants seek summary judgment. The law on summary judgment is well settled in Connecticut. "Practice Book § 17-49 . . . requires that [t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citation omitted; internal quotation marks omitted.) Hryniewicz v. Wilson, 51 Conn. App. 440, 443, 722 A.2d 288
(1999). "A `material' fact is a fact that will make a difference in the result of a case." River Dock Pile, Inc. v. Ins. Co. of North America,57 Conn. App. 227, 231, 747 A.2d 1060 (2000).
"[T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment. . . ." (Internal quotation marks omitted.) Hryniewicz v. Wilson, supra, 51 Conn. App. 443. "It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute." (Emphasis in original; internal quotation marks omitted.) Gambardella v. Kaoud, 38 Conn. App. 355, 358,660 A.2d 877 (1995).
Correspondingly, "the party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Hryniewicz v. Wilson, supra, CT Page 607751 Conn. App. 443-44. "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts in accordance with Practice Book (1998 Rev.) §§ 17-45 and 17-46 . . . which contradict those stated in the movant's affidavits and documents and show that there is a genuine issue for trial. If he does not so respond, summary judgment shall be entered against him." (Internal quotation marks omitted.) Id., 444. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Internal quotation marks omitted.) Norse Systems, Inc. v. TingleySystems, Inc., 49 Conn. App. 582, 591, 715 A.2d 807 (1998). Daly v.Shawmut Bank, 58 Conn. App. 427, 429-430, ___ A.2d ___ (2000).
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . in deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nomnoving party . . ." Maffucci v. Royal Park Ltd.P'ship, 243 Conn. 552, 554, 707 A.2d 15 (1998). The complaint alleges three counts: 1) negligence, 2) negligent infliction of emotional distress, and 3) intentional infliction of emotional distress. The defendants filed motions for summary judgment based in part on the assertion that the defendants' actions and conduct were discretionary in nature and thus, they are entitled to the defense of governmental immunity. The plaintiffs timely filed a motion in opposition to defendants' motions for summary judgment.
II. Special Defense: Governmental Immunity
 A. Qualified Immunity
Although governments and their agents are generally immune from liability for acts conducted in the performance of their official duties, the doctrine of governmental immunity has provided some exceptions for municipal employees. Conn. Gen. Stat. § 52-557n;[1]Bonamico v. Middletown, 47 Conn. App. 758, 706 A.2d 1386 (1998). A municipal employee has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. Purzycki v. Town of Fairfield,244 Conn. 101, 107, 708 A.2d 937 (1988). While "the hallmark of a discretionary act is that it requires the exercise of judgment," Lombardv. Peters, 252 Conn. 623, 628, 749 A.2d 630 (2000), ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion. Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131 (1989). The ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court, unless there are unresolved CT Page 6078 factual issues material to the applicability of the defense where resolution of those factual issues is properly left to the jury.Purzycki, 244 Conn. at 108. While there are some disputed factual issues in this case, they are not material to a determination of whether the defendants' acts were ministerial or discretionary.
The defendants argue that their actions were discretionary and that, therefore, they are entitled to qualified governmental immunity. "It is firmly established that the operation of a police department is a governmental function . . . and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality Gordon v. Bridgeport Hous. Auth., 208 Conn. 161, 179-80
(1988) (Citations omitted). The court finds that the facts related to the misidentification and subsequent detainment of plaintiff as alleged in the complaint required, in some measure, an exercise of judgment by the individual police officers. Accordingly, the defendants' actions were not ministerial, but discretionary. See also Elinsky v. Marlene, 1997 Conn. Super. LEXIS 3050, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 960557659 (Nov. 14, 1997) (Hale, J.) (finding that police department decisions to make arrests and the investigation of crimes are discretionary acts); Gonzalez v. City ofBridgeport, 1993 Conn. Super. LEXIS 1400, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 253464 (June 4, 1993) (Fuller, J.) (holding that the investigation of crimes and decisions to make arrests for them is clearly a discretionary rather than a ministerial function); Pagan v. Anderson, 1991 Conn. Super. LEXIS 1982, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 388804 (Aug. 22, 1991) (Hennessey, J.) (holding that "the use of police officers to serve arrest warrants is encompassed within the term `general deployment of police officers,' which was found to be a discretionary governmental action as a matter of law in Gordon"). A determination that defendants' actions were discretionary does not, however, resolve the issue of governmental immunity.
 B. Exceptions to Immunity
"The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Evon, 211 Conn. at 505 (Citations omitted). CT Page 6079
The plaintiff has argued that the first exception applies because the plaintiff was a foreseeable person in imminent harm. This "identifiable victim, imminent harm exception "has received very limited recognition in this state." See, e.g., Id. at 507 (finding no identifiable victim, imminent harm exception to governmental immunity where plaintiffs alleged that a city's failure to enforce codes and regulations resulted in a fire and subsequent deaths); Shore v. Town of Stonington, 187 Conn. 147, 154,444 A.2d 1379 (1982) (finding no identifiable victim, imminent harm exception to governmental immunity where plaintiffs claimed that a police officer's failure to arrest a drunk driver whom he had earlier stopped and questioned led to fatal car accident).
In delineating the scope of this exception, "our courts have considered numerous criteria, including the imminence of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." Burns v. Bd. of Educ., 228 Conn. 640, 647-48, 638 A.2d 1
(1994) (Citations omitted).
Applying these factors to the circumstances of this case, the court concludes that whether Stanley S. Mikita, II, was a foreseeable victim in imminent harm is a question of fact to be decided by the trier of fact. As the arrest warrant named Stanley S. Mikita with a birth date of May 21, 1958, reasonable minds may differ on the issue of whether a man with a very similar name who, in fact, was the target's father and who received such a notice could foreseeably have entered into a situation where he was forcibly detained by police officers and suffered harm as a result. Therefore, the qualified immunity defense does not apply and the motion for summary judgment is denied for Counts 1 and 2.
The plaintiff's third count is a claim under the tort of intentional infliction of emotional distress. In order to prevail against a defendant, Mr. Mikita must prove that defendant intended to inflict emotional distress, or knew or should have known that his conduct would likely result in emotional distress to the plaintiff, the defendant's conduct was extreme and outrageous, his conduct resulted in emotional distress to Mr. Mikita and the distress that resulted was severe.DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991). The court (Licari, J.) in regard to the previous motion for summary judgment ruled that it "cannot conclude that reasonable minds would not differ CT Page 6080 over whether or not the defendants' conduct was extreme and outrageous." Having reviewed the evidentiary submissions filed since that ruling, the court cannot find that there is sufficient basis to rule otherwise. Accordingly, the court will not disturb the previous finding of the court.
Accordingly, the motions for summary judgment are denied in their entirety.
The court
By ___________________________ Munro, J.